UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TRAVIS JARRETT FRANTTI,

              Plaintiff,

      -v-                                1:16-CV-810

STATE OF NEW YORK, SUSAN KNAPP,
MARY BETH LABATE, KAREN DAVIS,
KAREN ORCUTT, CHRISTOPHER
AMADO, and ROBERT MUJICA,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                     OF COUNSEL:

PETERSON, THOMAS LAW FIRM            THOMAS PETERSON, ESQ.
Attorneys for Plaintiff
49 Burlington Avenue
P.O. Box 578
Round Lake, NY 12151

HON. ERIC T. SCHNEIDERMAN             KEITH J. STARLIN, ESQ.
Attorneys for Defendants                      Ass't Attorney General
Office of the Attorney General
The Capitol
Albany, NY 12224

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

     Plaintiff Travis Jarrett Frantti ("Frantti" or "plaintiff") has filed this action against

defendants Susan Knapp ("Knapp"), Mary Beth LaBate ("LaBate"), Karen Davis ("Davis"),

Karen Orcutt ("Orcutt"), Christopher Amado ("Amado"), Robert Mujica ("Mujica"), and the

State of New York (the "State") (collectively "defendants") asserting claims for disability discrimination under § 504 of the Rehabilitation Act (First Cause of Action), employment discrimination and retaliation under Titles I and V of the Americans with Disabilities Act ("ADA") (Second Cause of Action), and a claim for the denial of Equal Protection under 42 U.S.C. § 1983 (Third and Fourth Causes of Action). Plaintiff seeks injunctive relief, actual damages, and attorneys' fees.

Defendants have moved pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) seeking partial dismissal of Frantti's complaint. The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.

## II. **BACKGROUND**[1]

In June of 1996, Frantti began working for the State's Division of Budget ("DOB") where, in 2010, he became a Principal Fiscal Policy Analyst. Compl. ¶¶ 10-11. Two years later, in July of 2012, plaintiff contracted an "intermittently debilitating" gastro-intestinal illness. Id. ¶ 12. Although this medical condition "has slowly improved over time," plaintiff's illness is "characterized by exacerbations which are unpredictable in timing or duration." Id. ¶ 14. Consequently, he could become "incapacitated at any time," and "[d]uring such episodes he is unable to perform any of his functions at work." Id.

In August of 2012, Frantti accepted a position with the State's Division of Criminal Justice Services ("DJCS") working directly with the Deputy Secretary for Public Safety, a move which required him to relocate his office from the DOB's suite at the State Capitol to a DJCS facility located elsewhere. Compl. ¶¶ 1, 17. According to plaintiff, his superiors at

---

[1] The following allegations are taken from the complaint and are assumed true for purposes of resolving the motion to dismiss.

DOB explained this move to DJCS would be only a temporary one; in fact, plaintiff would even stay on DOB's payroll and in a DOB job title. Id. ¶ 17.

In June of 2013, the Deputy Secretary of Public Safety announced her departure from State service. Compl. ¶ 18. Because this departure resulted in the bulk of his work responsibilities being eliminated, in August of 2013 Frantti requested a return to his position at DOB in the State Capitol. Id. Orcutt, an Administrative Officer with the Human Resources Department ("HR"), told plaintiff this could not be done because he had been "assigned" to DCJS. Id. ¶¶ 6, 19.

In September of 2013, Frantti met with Davis, the HR Director, to figure out the best way to get back to his old assignment at DOB. Compl. ¶¶ 5, 20. Plaintiff also attended a second meeting with Davis, Orcutt, "and others," who told him "he would be evaluated for a 2-month period to determine if he was performing work at his DOB Principal Fiscal Policy Analyst salary grade 31." Id. ¶ 20. During this two-month period, plaintiff repeatedly requested, and was denied, assignments at his salary grade. Id. Instead, plaintiff was assigned "only work far below" his salary grade. Id.

On January 7, 2014, Frantti submitted a report to HR Director Davis "requesting assistance in understanding his current employment situation and how to best return to a DOB position." Compl. ¶ 21. This report included information about plaintiff's medical problems. Id. Thereafter, plaintiff received a letter from HR Officer Orcutt that contained instructions on how to take an unpaid leave of absence under the Family Medical Leave Act ("FMLA"). Id. ¶ 22. This letter explained that "any absences for [your medical] condition beginning January 15, 2014, will count against your annual FMLA entitlement." Id.

Later in January of 2014, Frantti received an unsatisfactory performance evaluation—the first ever in his more than seventeen years as a State employee.[2]  Compl. ¶ 24.  Notably, this negative performance evaluation covered the two-month period during which HR Director Davis, HR Officer Orcutt, and others had indicated that HR would be evaluating the appropriateness of plaintiff's current salary grade.  Id.  As a result of this unsatisfactory evaluation, plaintiff was demoted to Associate Budget Examiner at Salary Grade 27.  Id. ¶ 25.

On February 11, 2014, Frantti was informed that his demotion came from "upper management."  Compl. ¶ 25.  According to plaintiff, this referred to Knapp, the Chief Budget Examiner.  Id. ¶¶ 3, 25.

In March of 2014, Frantti received a letter stating he had missed twenty-five full days of work since December 30, 2013, and explaining that he "must provide a medical note when absent a full or partial day."  Compl. ¶ 26.

On March 21, 2014, Frantti received another letter stating he must "call-in" within two hours after the start of each work day on which he is absent or else his pay would be docked.  Compl. ¶ 27.

In April of 2014, Frantti's primary care physician completed FMLA paperwork that "administratively designated" a period of FMLA leave as beginning on January 13, 2014.  Compl. ¶ 28.  Plaintiff's physician later amended this FMLA paperwork to include information explaining plaintiff "would need to take 'breaks' while at work as needed."  Id.

---

[2] Frantti alleges that between June of 1996 and July of 2012, he enjoyed "excellent" attendance and performance records and received "consistently excellent" performance evaluations, all of which resulted in promotions and high-level assignments.  Compl. ¶ 10.

In the Spring of 2014, Frantti was denied a "Performance Advance" pay increase. Compl. ¶ 29. Plaintiff alleges this denial resulted from absences caused by his disability. Id.

On November 13, 2014, Frantti made a written request for an accommodation "which would allow his physician to write excuses after an accumulated amount of absence from work rather than being required to be seen by his physician daily for an excuse." Compl. ¶ 30. Defendants ignored this request. Id.

On December 1, 2014, Frantti began a short-term period of disability leave. Compl. ¶ 31. A little more than a week later, plaintiff renewed his written request for an accommodation. Id. ¶ 30. This request was again ignored. Id. According to plaintiff, "more stringent requirements were imposed" instead. Id. For example, plaintiff was required to submit excuses within each 24-hour period "even when absent for an extended episode." Id.

In May of 2015, Frantti wrote a letter to HR Director Davis, HR Officer Orcutt, DOB Budget Director LaBate, and DJCS Acting Commissioner Michael Green "detailing his concerns about retaliation for a disability and restating his request for returning to his position at DOB." Compl. ¶ 32. In response, the Governor's Office of Employee Affairs initiated an investigation, but it has never been concluded. Id.

On June 10, 2015, Frantti returned to work at DJCS. Compl. ¶ 33. Plaintiff received a performance evaluation the same day, and it was again "Below Expectations" because of his disability-related absences. Id. Plaintiff was denied a second "Performance Advance" salary increase later that month. Id. ¶ 34.

On June 24, 2015, Frantti request an "Appeal Process Review" of his performance evaluation. Compl. ¶ 35. Two days later, plaintiff requested an opportunity to return to DOB to take a Civil Service exam for which he was eligible. Id. ¶ 36. This request was denied. Id.

On June 30, 2015, Frantti met with DJCS Acting Commissioner Green, who informed him he had been reassigned to the DJCS Finance Office. Compl. ¶ 37.

On July 2, 2015, Frantti submitted a complaint to the New York State Division of Human Rights ("DHR") alleged disability discrimination and retaliation. Compl. ¶ 38. The DHR "denied" this complaint on February 22, 2016. Id. The Equal Employment Opportunity Commission ("EEOC") adopted the DHR's findings and denied plaintiff's claim on April 8, 2016. Id.

On August 29, 2015, Frantti began treatment with a Clinical Social Worker, who recommended that his physician prescribe anxiety-reducing medication to help alleviate the negative effects of his workplace treatment. Compl. ¶ 39.

On September 3, 2015, Frantti received instructions explaining he must provide "a separate medical excuse for each absence within 24 hours of each absence, and not at the end of the entire period of absence." Compl. ¶ 42. Plaintiff alleges this requirement was in retaliation for submitting a DHR complaint. Id. ¶ 43.

On September 17, 2015, Frantti submitted a second DHR complaint, which was again denied on March 16, 2016. Compl. ¶ 44.

This action followed.

## III. LEGAL STANDARDS

### A. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it." N.Y. by Schneiderman v. Utica City Sch. Dist., 177 F. Supp. 3d 739, 745 (N.D.N.Y. 2016) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2003)). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Id. at 746 (quoting Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005)). "In determining the existence of subject matter jurisdiction, a district court may consider evidence outside the pleadings." Id. (quoting Saleh v. Holder, 84 F. Supp. 3d 135, 137-38 (E.D.N.Y. 2014)).

### B. Rule 12(b)(6)

"To survive a Rule 12(b)(6) motion to dismiss, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" Ginsburg v. City of Ithaca, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Although a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief' (FED. R. CIV. P. 8(A)(2)), more than mere conclusions are required." Id. "Indeed, '[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). "Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims." Id.; see also Twombly, 550 U.S. at 570 (requiring "only enough facts to state a claim to relief that is plausible on its face").

## IV. DISCUSSION

### A. Rehabilitation Act

First, defendants contend the Rehabilitation Act does not provide a basis for liability

- 7 -

against Chief Budget Examiner Knapp, DOB Budget Director LaBate, HR Director Davis, HR Officer Orcutt, Amado, or Mujica (collectively the "individual defendants").  Frantti concedes that money damages are unavailable against them but asserts that they are properly named for purposes of plaintiff's request for prospective injunctive relief.  Defendants reply that any claim for injunctive relief against the individual defendants, even in their official capacities, would be redundant of plaintiff's claim for injunctive relief against the State.

Section 504 of the Rehabilitation Act of 1973 prohibits a "program or activity" that receives federal funds from discriminating against an individual on the basis of his disability, 29 U.S.C. § 794(a), and applies to "all of the operations" of any "department, agency, . . . or other instrumentality of a State."  § 794(b)(1)(A).[3]

The parties more or less agree that a plaintiff cannot maintain a Rehabilitation Act claim against an individual defendant being sued in his or her *personal* capacity.  See Pl.'s Mem. Opp'n, ECF No. 17, 3-4; see also e.g., Freeman v. Kirisits, 2017 WL 475679, at *6 (W.D.N.Y. Feb. 6, 2017) ("[I]ndividuals may not be held liable under the Rehabilitation Act in their individual capacities.").

As Frantti points out, however, the Second Circuit has stated that "Rehabilitation Act suits for prospective injunctive relief may . . . proceed against individual officers in their official capacity."  Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).  But courts have concluded there is no need for that kind of official-capacity litigation where, as here, a plaintiff can properly maintain his cause of action directly against the State.  See, e.g., Freeman, 2017 WL 475679, at *6 ("Since plaintiff is able to assert his Rehabilitation Act claim against the

---

[3] "[T]he Rehabilitation Act imports the discrimination standards of Title I of the ADA and the retaliation standards of Title V."  Quadir v. N.Y. State Dep't of Labor, 39 F. Supp. 3d 528, 537 (S.D.N.Y. 2014).

state agency itself, there is no justification for allowing plaintiff to also assert the same claims against the Governor in his official capacity."); Keitt v. NYS Dep't of Corr. & Cmty. Supervision, 2015 WL 2383687, at *21 (W.D.N.Y. May 19, 2015) (concluding same where plaintiff asserted Rehabilitation Act claims against individual defendants in their official capacities as well as claims directly against the state entity); Marino v. City Univ. of N.Y., 18 F. Supp. 3d 320, 332 (E.D.N.Y. 2014) (permitting Rehabilitation Act claim for "injunctive relief and money damages" to proceed directly against state entity).

Therefore, because Frantti's Rehabilitation Act claim can be asserted directly against the State itself, any such claim against the individual defendants, in either their personal or representative capacities, is dismissed as redundant.

### B. Americans with Disabilities Act

Defendants next contend that Frantti's Second Cause of Action must be dismissed in its entirety. According to them, the ADA does not permit for liability against the individual defendants. In fact, defendants argue that the Eleventh Amendment operates to completely bar this claim.

Frantti's Second Cause of Action asserts that defendants have violated Title I (employment discrimination) and Title V (retaliation) of the ADA. See Mary Jo C. v. N.Y. State & Local Ret. Sys., 707 F.3d 144, 171 (2d Cir. 2013) (limiting discrimination claims by public employees to Title I of the ADA); Emmons v. City Univ. of N.Y., 715 F. Supp. 2d 394, 410 (E.D.N.Y. 2010) (observing that Title V of the ADA protects plaintiffs from retaliation for complaints about employment discrimination).

To the extent Frantti's complaint asserts these ADA-based theories against the individual defendants in their *personal* capacities, the claim must be dismissed. See, e.g.,

Sherman v. Cty. of Suffolk, 71 F. Supp. 3d 332, 343 (E.D.N.Y. 2014) (concluding there is no individual liability under the ADA for discrimination or retaliation claims). And this makes sense, because the ADA's statutory language is concerned with the alleged (mis)conduct of an entity—that is, an employer—covered by its various provisions. Accordingly, a plaintiff seeking to vindicate his rights under Titles I or V of the ADA must simply name the entity itself. See, e.g., Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161 (2d Cir. 2006).

But in this case, the entity—New York State—is immune from suit under these provisions of the ADA by virtue of the Eleventh Amendment.[4] "As a general rule, state governments and their agencies may not be sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress." Jackson v. Battaglia, 63 F. Supp. 2d 214, 219-20 (N.D.N.Y. 2014) (citation omitted). The scope of this immunity extends to cover "state officials at those agencies working on behalf of the state (i.e. in their official capacities)," Emmons v. City Univ. of N.Y., 715 F. Supp. 2d 394, 406 (E.D.N.Y. 2010), and will bar a plaintiff's claim "regardless of the type of relief sought." Morales, 22 F. Supp. 3d at 268.

With respect to these ADA claims in particular, "Congress has never abrogated New York's sovereign immunity from claims under Title I and V of the ADA and New York has never waived it." Quadir, 39 F. Supp. 3d at 537. Consequently, ADA claims asserted against New York State, its agencies, or its officials under Title I or Title V are barred by the Eleventh Amendment. See, e.g., Davis v. Vt., Dep't of Corr., 868 F. Supp. 2d 313, 322 (D. Vt. 2012).

---

[4] "A claim that is barred by a state's sovereign immunity must be dismissed pursuant to the Eleventh Amendment for lack of subject matter jurisdiction." Morales v. New York, 22 F. Supp. 3d 256, 268 (S.D.N.Y. 2014).

At first blush, this body of law seems to leave Frantti without an ADA-based remedy against his employer. But as with most legal doctrines, there are exceptions to the Eleventh Amendment's bar to suit. As relevant here, "[t]he Ex parte Young doctrine ensures the protection of individuals' federal rights by allowing suits for prospective injunctive relief against state officials in their official capacity." Marino, 18 F. Supp. 3d at 333.

"In determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint (1) alleges an ongoing violation of federal law and (2) seeks relief properly characterized as prospective." Marino, 18 F. Supp. 3d at 333 (quoting Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002)).

Frantti's allegations satisfy this straightforward test. Miller v. N.Y. State Police, 2016 WL 2868840, at *10 (W.D.N.Y. May 17, 2016) (Report & Recommendation) ("[T]he Eleventh Amendment does not prevent suit against the individual Defendants . . . insofar as [they] are sued in their official capacities, Plaintiff alleges an ongoing violation of federal law, *i.e.*, the ADA, and Plaintiff seeks only prospective injunctive relief."), adopted in relevant part sub nom., Miller v. Kendall, 2016 WL 4472748 (W.D.N.Y. Aug. 25, 2016); see also State Emps. Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 97 (2d Cir. 2007) (concluding Ex parte Young exception was satisfied where plaintiffs alleged "ongoing" harm resulting from "the State's present, ongoing failure to . . . restore plaintiffs to other existing positions"); Lee v. Dep't of Children & Families, 939 F. Supp. 2d 160, 166 (D. Conn. 2013) (suggesting official-capacity ADA Title I claims were properly asserted against Connecticut state agency official "to the extent they seek prospective injunctive relief"); Henny v. N.Y. State, 842 F. Supp. 2d 530, 545 n.13 (S.D.N.Y. 2012) (suggesting ADA Title I claims for prospective

injunctive relief would be viable against officials employed by New York state agency). Accordingly, plaintiff may maintain his official-capacity ADA claim for prospective injunctive relief against the individual defendants under Ex parte Young.

But this conclusion does not completely end the inquiry. Under the ADA, "a claimant is required to file a[n administrative] charge of discrimination . . . within 300 days of the alleged discriminatory or retaliatory act." Missick v. City of N.Y., 707 F. Supp. 2d 336, (E.D.N.Y. 2010). "Failure to do so operates as a statute of limitations precluding further relief." Id.

"An exception exists for claims that the discriminatory acts were part of a continuing policy and practice of prohibited discrimination." Valtchev v. City of N.Y., 400 F. App'x 586, 588 (2d Cir. 2010) (summary order); Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir. 1993) (explaining that this "continuing violation" doctrine applies "to cases involving specific discriminatory policies or mechanisms such as discriminatory seniority lists").

"However, multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." Valtchev, 400 F. App'x at 588 (citation omitted). "To bring a claim within the continuing violation exception, a plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period." Id.

Frantti alleges that he first submitted an administrative complaint on July 2, 2015, Compl. ¶ 38, which means that any discriminatory or retaliatory acts that occurred before September 5, 2014 would ordinarily be time-barred. As defendants are quick to point out, the complaint identifies a number of allegedly discriminatory acts that occurred before this September 5 cut-off date. Defs.' Mem. at 14. Plaintiff, for his part, does not argue that any

of those allegations should be considered under the continuing violation doctrine.[5] Pl.'s Mem. at 11. Accordingly, plaintiff's ADA claim remains viable in this lawsuit only to the extent it seeks prospective injunctive relief for ongoing violations that have been timely exhausted.

### C. 42 U.S.C. § 1983

Finally, defendants correctly point out that Frantti's Third Cause of Action cannot stand alone, since § 1983 "provides only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993). In response, plaintiff explains that his § 1983 claim should be read in conjunction with his Fourth Cause of Action, which alleges a denial of equal protection. Pl.'s Mem. Opp'n at 10. Defendant's reply appears to concede that plaintiff *has* pleaded a cognizable § 1983-based equal protection claim in his Fourth Cause of Action. With that in mind, plaintiff's Third Cause of Action will be dismissed as duplicative.

## V. CONCLUSION

First, Frantti's Rehabilitation Act claim is dismissed against the individual defendants in both their personal and official capacities. Second, plaintiff's Title I and Title V ADA claim is dismissed against the State because New York enjoys sovereign immunity from suit. Third, plaintiff's ADA claim is also dismissed against the individual defendants except to the extent it states a properly exhausted claim for prospective injunctive relief against these defendants in their official capacities. Finally, plaintiff's free-standing § 1983 claim in his Third Cause of Action is dismissed based on defendants' acknowledgment that plaintiff may

---

[5] Plaintiff filed a second charge later, but of course a later-filed charge cannot "resurrect" time-barred claims. Lewis v. N.Y. City Police Dep't, 908 F. Supp. 2d 313, 324 (E.D.N.Y. 2012), aff'd sub nom. Lewis v. NYC Police Dep't, 537 F. App'x 11 (2d Cir. 2013) (summary order).

still pursue § 1983-based relief under the Fourth Cause of Action.

Therefore, it is

ORDERED that

1. Frantti's First Cause of Action is DISMISSED as against Knapp, LaBate, Davis, Orcutt, Amado, and Mujica in their personal capacities;

2. Frantti's First Cause of Action is DISMISSED as against Knapp, LaBate, Davis, Orcutt, Amado, and Mujica in their official capacities;

3. Frantti's Second Cause of Action is DISMISSED as against the State of New York;

4. Frantti's Second Cause of Action is DISMISSED as against Knapp, LaBate, Davis, Orcutt, Amado, and Mujica in their personal capacities; and

5. Frantti's Third Cause of Action is DISMISSED.

IT IS SO ORDERED.

Dated: March 8, 2017
      Utica, New York.

United States District Judge